IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MLADEN MILJAS<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>GREG COHEN PROMOTIONS, LLC, and GREG COHEN<br><br>Defendants, and, with respect to Greg Cohen Promotions, LLC, Counterclaim Plaintiff. | NO. 4:20-cv-320-SMR-CFB<br><br>**PLAINTIFF/COUNTERCLAIM DEFENDANT'S MOTION TO EXCLUDE EXPERT OPINIONS OF HASIM RAHMAN** |

Plaintiff/Counterclaim Defendant Mladen Miljas ("Plaintiff," or "Mladen"), pursuant to Federal Rule of Evidence 702, hereby moves the Court for an order excluding Greg Cohen Promotions, LLC and Greg Cohen's ("Defendants") designated expert, Hasim Rahman, from offering opinions "regarding the way Mr. Miljas['] career was being handled by Greg Cohen Promotions ('GCP')," "whether [he] believe[s] that GCP satisfied its obligations under the Exclusive Promotional Agreement amongst the parties," and on his "examin[ation] if the selection of the opponents that Mr. Miljas faced after signing with GCP was suitable," and any other opinions including the opinion in "Defendants' Rahman Report By Hasim Rahman" (hereinafter "Rahman Report"), attached hereto as Exhibit A.

**INTRODUCTION**

As Mr. Rahman explains, his sole expert "qualifications are that [he was] the former Two Time Heavyweight Champion of The World," fighting primarily in the late-1990s and early 2000s. (Rahman Report ¶ 3). His opinions, as articulated, are simply comparisons between his own career (20 years ago) and Mladen's, which he analogizes because they are "both known to be big punchers." (Rahman Report ¶ 3). Respectfully, he is not qualified to offer opinions that would be

relevant to the jury, nor are the opinions he does offer reliable. Offering his opinions to the jury as those of an expert would be worse than unhelpful, it would risk confusion and unfair prejudice. Accordingly, Mr. Rahman and his report should be excluded from trial.

**GOVERNING LEGAL STANDARDS**

The *Daubert v. Merrell Dow Pharmaceuticals, Inc.* test determines the admissibility of expert testimony under Federal Rule of Evidence 702. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-593 (1993); *see also Kumho Tire Co., Ltd. V. Carmichael,* 526 U.S. 137, 149 (1999) (holding *Daubert* analysis applies to nonscientific expert testimony based on "specialized knowledge"). Under *Daubert* and Rule 702, expert testimony must meet three requirements: (1) the expert must be qualified, (2) the expert's testimony must be reliable, and (3) the expert's testimony must be relevant. *Daubert*, 509 U.S. at 580; Fed. R. Evid. 702. Courts in the Eighth Circuit regularly exclude expert testimony if the expert is unqualified or the expert's testimony lacks relevancy or reliability. *McMahon v. Robert Bosch Tool Corp.*, 5 F.4th 900, 903 (8th Cir. 2021); *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006); *Willet v. Johnson & Johnson*, 465 F. Supp. 3d 895, 907 (S.D. Iowa 2020).

To determine if a witness is qualified to serve as an expert "[t]he test is whether the…[expert's] education and experience demonstrate a knowledge of the subject matter." *Moe v. Grinnell Coll.*, 547 F. Supp. 3d 841, 846 (S.D. Iowa 2021) (quoting *Hill v. Gonzalez*, 454 F.2d 1201, 1203 (8th Cir. 1972)). To satisfy the reliability requirement, "the proponent of the expert testimony must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Marmo*, 457 F.3d at 757-758. Courts use four factors to analyze reliability under *Daubert*: (1) "whether the theory or technique in question can be (and has been) tested," (2) "whether it has been subjected

to peer review and publication," (3) "its known or potential error rate and the existence and maintenance of standards controlling its operation," and (4) "whether it has attracted widespread acceptance within a relevant scientific community." *Daubert*, 509 U.S. at 580. To satisfy the relevancy requirement, the proponent of the expert testimony "must show that the reasoning or methodology in question is applied properly to the facts in issue." *Marmo*, 457 F.3d at 758.

A court assessing expert testimony under Federal Rule of Evidence 702 "should also be mindful of other applicable rules." *Daubert*, 509 U.S. at 595. Even in circumstances where an opinion might be admissible as reliable expert testimony, the opinion should not be admitted if it "presents too much potential for prejudice in the form of a decision on improper basis, confusing the issues, and misleading the jury." *Willet v. Johnson & Johnson*, 465 F. Supp. 3d 895, 910 (S.D. Iowa 2020); Fed. R. Evid. 403 (allowing the exclusion of evidence where the value of the evidence "is substantially outweighed by a danger of … unfair prejudice, confusing the issues, [or] misleading the jury.").

## ARGUMENT

Mladen moves the Court to exclude Mr. Rahman's expert testimony because (I) Mr. Rahman is not qualified to opine on the Agreement, (II) Mr. Rahman's opinion is not reliable, (III) Mr. Rahman's opinion is not relevant, and (IV) the probative value of Mr. Rahman's opinion is outweighed by its risk of causing unfair prejudice, confusing the issues, and misleading the jury.

### I. MR. RAHMAN IS NOT QUALIFIED TO OPINE ON THE AGREEMENT.

Mr. Rahman is not qualified to opine on the Agreement, and particularly not the issue of whether GCP "satisfied its obligations" under the Agreement. His "education and experience" do not "demonstrate a knowledge of the subject matter" of boxing contracts. *Moe* 547 F. Supp. 3d at 846; *see also Kumho Tire Co.*, 526 U.S. at 154 (holding that an expert must be qualified "to draw a conclusion regarding *the particular matter to which the expert testimony was directly relevant.*").

Indeed, "professional boxing, like any business industry, requires an extensive commercial and legal knowledge of the industry, a familiarity with the applicable rules and regulations of the governing bodies and an understanding of, and relationship with, the key players. This applies whether you are involved in the transactional aspects of the boxing industry, the legislative and regulatory process, or the all too frequent litigation end." Jeffrey S. Fried, *The Sweet Science, Legally Speaking (Professional Boxing)*, 14 J. Legal Aspects Sport 75 (2004).

Mr. Rahman lacks the requisite commercial and legal knowledge of the industry and a familiarity with applicable rules and regulations. While experience in the boxing industry including being a former boxer and a trainer, manager, commentator, and advisor might entitle one to opine on questions like a boxer's performance in a fight, it does not qualify one to opine on whether the Defendants "satisfied its obligations under the Exclusive Promotional Agreement." (Rahman Report ¶¶ 1–2). Despite his lack of legal expertise, Mr. Rahman spends a significant portion of his expert opinion providing legal opinions on matters such as Mladen's immigration status, (Rahman Report ¶ 30); the legal obligations between promoters, boxers, and managers, (Rahman Report ¶¶ 31–34); and how the Agreement compares to other contracts, (Rahman Report ¶ 34). These opinions are improper 1) because one boxer's decades-old personal experiences do not demonstrate the knowledge of the subject matter required by *Daubert* and Federal Rule of Evidence 702, 2) they constitute legal opinions (*see Kostelecky v. NL Acme Tool/NL Industries, Inc.*, 837 F.2d 828, 830 (8th Cir. 1988) ("Under [Federal Rule of Evidence 702], evidence that merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible. Often such evidence is labeled a 'legal conclusion.'") and 3) this Court has already entered an Order on Plaintiff's Motion for Partial Summary Judgment (Dkt.113), finding in part

that the Defendants breached certain of their obligations in the Agreement. Mr. Rahman is therefore unqualified to opine on the Agreement and his testimony should be excluded.

## II. MR. RAHMAN'S OPINION IS NOT RELIABLE.

Mr. Rahman's opinions should also be excluded because they are not reliable. Mr. Rahman's opinions are not reliable because his methods cannot be and have not been tested, his theory has not been subject to peer review or publication, there is no standard or known error rate controlling his technique's operation, the technique is not generally accepted in the expert boxing community, and his opinion ignores key facts of the case.

### A. Summary of Mr. Rahman's Methodology

Mr. Rahman's method for determining the suitability of Mladen's opponents is comparing Mladen's opponents to his own, bout by bout. (Rahman Report ¶¶ 4–14). Mr. Rahman then determines that the opponents Defendants selected for Mladen were suitable because Mladen's opponents are, he asserts, similar to his own, and he was able to achieve success in his own career.

### B. Mr. Rahman's Methodology Fails All *Daubert* Reliability Factors.

This methodology used by Mr. Rahman fails the first three Daubert factors: it is untestable, has not been subject to peer review, and lacks any standard or known error rate. The methodology is unfalsifiable and untestable because it is based solely on Mr. Rahman's own subjective experiences from over twenty years ago. To make his results testable, Mr. Rahman could have compared Mladen's opponents to modern boxers' opponents, such as Scott Shaffer did in his Expert Report that included nine examples from modern boxing. Mr. Rahman also could have accommodated for confounding variables by using a more rigorous technique. As with any game, there are always elements of training, luck, and talent involved in winning and losing a boxing match. Basing the suitability of Mladen's opponents on the experiences of just one boxer over twenty years ago fails to accommodate for all the variables involved in an individual boxing match

and the suitability of an opponent. Just because Mr. Rahman was prepared to face an opponent of a particular stature, record, or disposition on his tenth fight does not mean that Mladen was prepared to face a similar opponent in his tenth fight.

Mr. Rahman's technique also fails the fourth *Daubert* factor because it is not generally accepted in the boxing industry. In the industry, a boxer's success may be measured by their ranking. *See ABC Ratings Criteria*, Association of Boxing Commissions and Combative Sports, https://www.abcboxing.com/abc-ratings-criteria/. Objective standards for ranking boxers were developed in response to requirements under the Muhammad Ali Boxing Reform Act. *Id.* The standards for assessing boxers objectively were developed because without an objective system, "ratings are susceptible to manipulation, have deprived boxers of fair opportunities for advancement, and have undermined public confidence in the integrity of the sport." H.R. Rep. No. 106-449 § 2 (1999). There is, in theory, an objective method for assessing the performance of a boxer and the suitability of his opponents, but this method is certainly not Mr. Rahman's method. Mr. Rahman's method is to compare a contemporary boxer (Mladen) to a historical boxer (himself). Mr. Rahman's methodology fails to use any objective measures to determine the suitability of Mladen's opponents, which subjects his opinion to "manipulating." Mr. Rahman's methodology therefore fails the fourth *Daubert* factor by using a technique that is not generally accepted in the boxing community.

**C. Mr. Rahman Blatantly Disregards Key Facts.**

In addition to failing all four factors of the *Daubert* test for reliability, Mr. Rahman's opinion is also not reliable because it abjectly ignores key facts that inform whether Defendants fulfilled their obligations to Mladen. Expert testimony that is "so fundamentally unreliable that is does not assist the jury" must be excluded. *Moe*, 547 F. Supp. 3d at 847 (quoting *Weitz Co. v. MH Wash.*, 631 F.3d 510, 527 (8th Cir. 2011)). Sometimes there may be "…simply too great an

analytical gap between the data and the opinion proffered" to justify admitting an expert opinion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

For example, when Mr. Rahman discusses a potential opponent of Mladen's, Ruan Visser, Mr. Rahman ignores information that was readily at his disposal. Mr. Rahman could have performed a simple online search to determine that Ruan Visser posed a danger to Mladen because of Visser's steroid use (not to mention that Visser's steroid use resulted in previous fights being labeled as no contest, so the arrangement may have put Mladen in danger without the possibility of improving his record). Mr. Rahman also ignores that Mladen would have only had three weeks to prepare to fight an opponent that was larger and younger than his previous opponents, and instead calls "the notion that Visser was a risky bout or significant threat . . . ludicrous."

Mr. Rahman further ignores key facts in his discussion of the Agreement. Mr. Rahman opines that "it is clear that the dates and locations of all bouts are decided in the sole and absolute discretion of the promoter" as provided in the Agreement, but the date and location are irrelevant. What matters, and what Mr. Rahman overlooks, is that the promoter must arrange bouts with opponents that are "in the best interest of Boxer's career" and "commensurate with Boxer's level of ability, ranking, stature in the boxing industry and marketability, as determined in *Boxer's* reasonable discretion." (Agreement § 3 (emphasis added)). Even then, the Agreement is clear the boxer has the right to, in their reasonable discretion, reject bouts. (Agreement ¶ 6).

Mr. Rahman's Expert Report fails all four *Daubert* reliability factors and disregards key facts. His opinions should therefore be excluded.

## III. MR. RAHMAN'S OPINION IS NOT RELEVANT.

Were Mr. Rahman's opinions reliable, they would still not be relevant. Large swaths of Mr. Rahman's expert testimony are not relevant because they will not "aid the jury in resolving a factual dispute" and are not "sufficiently tied to the facts of the case." *Daubert*, 509 U.S. at 591

(internal quotation marks omitted). There are several examples of irrelevant opinions in the Rahman Report.

**A. Example 1: Irrelevant Discussion of Mr. Rahman's Own Career**

Mr. Rahman's extensive discussion of his own boxing career is a primary example of the Rahman Report's lack of relevancy. Mr. Rahman's boxing experience from over twenty years ago will not aid the jury in deciding whether the opponents selected for Mladen were suitable and should therefore be excluded. (Rahman Report ¶¶ 4-11).

**B. Example 2: Irrelevant Discussion of Canadian Heavyweight Title**

The Rahman Report also contains an entire provision titled "The Canadian Heavyweight Title is Not Important" that lacks relevance. (Rahman Report ¶¶ 15-18). While Mr. Rahman supports his conclusions regarding the insignificance of the Canadian Heavyweight Title with a variety of statistics and comparisons, he fails to explain in his report how his criticism of the Canadian Heavyweight Title, or Canadian heavyweight fighters in general, is tied to the facts or issues of this case. The credibility of the Canadian Heavyweight Title is of no relevance to Defendant' fulfillment of their contractual obligations, ostensibly the issue Mr. Rahman was trying to opine upon.

**C. Example 3: Irrelevant Discussion of Fight Refused After Notice of Breach**

Mr. Rahman's discussion of the offer to fight Sergio Ramirez on July 9, 2020, is another example of an irrelevant opinion in the Rahman Report. (Rahman Report ¶ 14). The opinion does not help the jury determine whether Cohen Promotions met its contractual obligations under the Agreement because Mladen had already sent Cohen a Notice of Termination on June 21, 2020. In his discussion of the Ramirez fight, Mr. Rahman states that he "cannot recall ever seeing more excuses and reasons from a fighter regarding why not to take fights than I have here for Miljas."

Both the context surrounding the statement and the statement itself are irrelevant since the contract was terminated by this point. (The statement is also prejudicial, as discussed below.)

**D. Example 4: Irrelevant Discussion of Standards for Promotional Agreements**

Finally, Mr. Rahman discusses the details of the Agreement, the standards for boxer/promoter relationships, and opines that the "agreement is very similar to most EPA's [sic] in its form." (Rahman Report ¶¶ 31–34). This pages-long explanation of the standards for agreements between promoters, boxers, and managers is irrelevant and constitutes an impermissible legal opinion . *Hogan v. American Tel. & Tel. Co.*, 812 F.2d 409, 411 (8th Cir. 1987) ("Opinion testimony is not helpful to the factfinder if it is couched as a legal conclusion."). There is no issue of fact in the case as to whether the Agreement was similar to other agreements or was a standard agreement. The issues disputed in this case regard whether the requirements of the Agreement were satisfied, not how the Agreement compares to other promotional agreements.

Mr. Rahman's opinion should therefore be excluded for failing the required standards for relevancy under *Daubert* and Rule 702.

**IV. MR. RAHMAN'S OPINION'S PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY A DANGER OF UNFAIR PREJUDICE, CONFUSING THE ISSUES, AND MISLEADING THE JURY.**

Even if Mr. Rahman's expert opinion is found to be qualified, reliable, and relevant, his opinion should be inadmissible because its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. There are several instances where Mr. Rahman's opinion would prejudice, mislead, or confuse a jury.

**A. Example 1: Confusing and Misleading Discussion of Mr. Rahman's Own Career**

The issue in this case is whether Defendants fulfilled their obligations to Mladen. However, Mr. Rahman provides repeated, in-depth descriptions of his own boxing career. Simply because

Mr. Rahman was able to achieve success from the bouts arranged by his own promoter over twenty years ago does not indicate that Defendants fulfilled their obligations to Mladen. As discussed previously, Mr. Rahman's discussion of his own career is not in accordance with any typical methodology. Yet, he opines that Mladen's career "was being orchestrated even better than mine was!", (Rahman Report ¶ 13), which is plainly designed to confuse the issue. Therefore, the probative value of Mr. Rahman's discussion of his own career is outweighed by its potential to confuse the issues of the case and mislead the jury.

**B. Example 2: Prejudicial Discussion of Canadian Heavyweight Title**

Mr. Rahman's criticism of the Canadian Heavyweight title further confuses the issues of case and prejudices the jury. (Rahman Report ¶¶ 15–18). Whether the Canadian Heavyweight Title carries legitimacy or not does not might be an interesting debate for boxing aficionados to have, but it does not impact whether or not Defendants fulfilled their obligations to Mladen. The probative value of the Canadian Heavyweight testimony is therefore outweighed by its potential to confuse or mislead.

**C. Example 3: Confusing and Prejudicial Discussion of Promotional Agreements**

Mr. Rahman's discussion of his own interpretations of the Agreement and his discussion of the standard agreements between promoters and boxers confuse the issues of the case. (Rahman Report ¶¶ 28–34). Mr. Rahman's testimony was only supposed to opine whether Defendants fulfilled their obligations under the Agreement, and specifically whether Defendants provided Mladen with suitable opponents. However, Mr. Rahman's discussion of how the Agreement compares to others disregards this issue and instead prejudicially and confusingly suggests that because the Agreement was similar to other boxing contracts, it was satisfied. Moreover, Mr. Rahman lacks expertise on boxing contracts, so the probative value of his opinion on the Agreement is greatly outweighed by the potential for his testimony to mislead.

**D. Example 4: Prejudicial Discussion of Text Messages**

Mr. Rahman discusses Mladen's text messages to Greg Cohen, wherein Mladen seemed satisfied with his experiences travelling and with an individual bout. (Rahman Report ¶¶ 5–7). This could mislead a jury and confuse the issues of the case because the issue at hand is not whether Mladen expressed gratitude for his fights at the time they occurred, but whether Defendants fulfilled their legal obligations.

**E. Example 5: Prejudicial and Misleading Language Describing Mladen**

Finally, Mr. Rahman uses prejudicial and misleading language throughout his Report to describe Mladen and his career. (Rahman Report ¶ 14 ("[Mladen]…needs to look himself in the mirror and hold himself accountable for his own missteps.")); (Rahman Report ¶ 30 (stating Mladen's "negligence" led Defendants to be unable to perform their contractual obligations, which "would negate any obligation to provide fights to Miljas . . . ."")); (Rahman Report ¶ 29 (stating that the decision not to fight Visser was "ludicrous")); (Rahman Report ¶ 22 ("The damage that Miljas has inflicted upon GCP with his frivolous claims . . . cannot be reasonably quantified.")). This inflammatory language could prejudice and mislead a jury and should therefore be excluded.

Mr. Rahman's Rahman Report should be excluded because it confuses the issues of the case with issues such as Mladen's career decisions, his merits as a boxer, and others; it would lead to prejudice against Mladen; and would mislead and confuse a jury.

**<u>CONCLUSION</u>**

Mr. Rahman's Expert Report and the opinions offered therein are not based on sufficient qualification; are not reliable; are not relevant; and could lead to prejudice, confusion of the issues, and misleading of the jury. Mr. Rahman's expert testimony therefore falls short of *Daubert* and Federal Rules of Evidence standards and should be excluded. Plaintiff respectfully requests an order preventing Defendants from offering Mr. Rahman or his report at trial.

Respectfully submitted,

*/s/ Michael A. Dee*

Michael A. Dee, AT0002043
Brian S. McCormac, AT0005117
Thomas D. Story, AT0013130
BROWN, WINICK, GRAVES, GROSS, AND BASKERVILLE, P.L.C.
666 Grand Avenue, Suite 2000
Des Moines, IA 50309-2510
Telephone: 515-242-2400
Facsimile: 515-283-0231
Email: michael.dee@brownwinick.com
brian.mccormac@brownwinick.com
thomas.story@brownwinick.com

ATTORNEYS FOR PLAINTIFF AND COUNTERCLAIM DEFENDANT MLADEN MILJAS

**CERTIFICATE OF SERVICE**

I certify that on December 21, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will serve all counsel of record.

*/s/ Gabrielle Foshe*

Gabrielle Foshe